**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| ROMIE DAVID BISHOP, and | ) | Case No.  11-12338 (BLS) |
| SHIRLEY ANN BISHOP, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ROMIE DAVID BISHOP, and | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No.  12-50912 |
| | | (BLS) |
| | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, FEDERAL NATIONAL | ) | |
| MORTGAGE ASSOCIATION, INC. | ) | |
| FANNIE MAE CMO, INC., AND JOHN | ) | |
| DOE | ) | Docket Ref. No. 60 |
| | ) | |
| Defendants. | ) | |
| | ) | |

# OPINION

Before the Court is Debtor-Plaintiff Romie David Bishop's Second Amended Complaint [Adv. Docket No. 60] against Federal National Mortgage Association.  For the following reasons, and after a trial held on December 15, 2014, the Court determines that Mr. Bishop has not carried his burden with respect to the claims articulated in his Second Amended Complaint, and judgment will be entered in favor of Federal National Mortgage Association.

## I. BACKGROUND

### A. Factual Background

Romie David Bishop ("Mr. Bishop" or "Plaintiff") and Shirley Bishop (collectively "the Debtors") purchased a residential property at 220 Hazel Ridge Drive, Wilmington, Delaware 19810 (the "Property") on May 4, 2007, and obtained a mortgage loan through Cardinal

Financial Company, Ltd. Partnership.[1]  At the closing of the transaction on May 4, 2007, the Bishops executed a mortgage (the "Mortgage") on the Property, and Mr. Bishop executed a note in the principal amount of $299,250.00 (the "Note") for repayment of the loan.[2] The Mortgage named Cardinal as the "Lender" and it named the Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, as nominee for the Lender, its successors and assigns. The Note named Cardinal as the Lender, while the space in section 1 of the Note to designate the name of the payee was left blank. At the closing, Bishop signed a "Notice of Assignment, Sale or Transfer of Servicing Rights", whereby he acknowledged that the servicing of the loan was assigned to CitiMortgage, Inc. ("CitiMortgage"), with the first monthly mortgage payment to be made to CitiMortgage.[3]

The Mortgage was properly recorded with the New Castle County, Delaware Recorder of Deeds (the "Recorder of Deeds") on May 11, 2007.[4] In the MERS database, the Bishops' mortgage was assigned Mortgage Identification Number (MIN) 1000922-0000013423-2. [Trial Exhibits 9-10]. On May 17, 2007, CitiMortgage purchased the Note and Mortgage from Cardinal, and became both the servicer of and investor (beneficial owner) of the Note.  On June 28, 2007, the Federal National Mortgage Association ("Fannie Mae") became the investor or beneficial owner of the Bishops' mortgage loan [Trial Exhibit 9].

Fannie Mae is a government-sponsored enterprise that was chartered by Congress in 1938 to support liquidity, stability and affordability in the secondary mortgage market, where existing mortgage-related assets are purchased and sold.[5] Its charter does not permit it to originate loans or lend money directly to consumers in the primary mortgage market. Fannie Mae purchases mortgage loans that satisfy certain criteria from lenders, thereby allowing those lenders to remove the loans from their balance sheets and providing them with cash to make additional loans. [Adv. Docket No. 95 at ¶6].

Fannie Mae's purchase of the Bishops' Mortgage Loan with CitiMortgage was made pursuant to a pre-existing master agreement between Fannie Mae and CitiMortgage. Fannie Mae's interest as

---

[1] *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670, at *1-2 (Del. Super. Ct. Mar. 4, 2013)

[2] *Id.*

[3] *Id.* at *2.

[4] *Id.*

[5] *See generally* Federal National Mortgage Association Charter Act, as amended (Title III of the National Housing Act), 12 U.S.C. 1716 et seq.

investor for the Bishops' Mortgage was entered on MERS's electronic database system on June 29, 2007. From June 28, 2007 to the present, Fannie Mae has remained the beneficial owner of the Bishops' Mortgage Loan [Trial Exhibit 9]. When Fannie Mae became the owner of the Bishops' mortgage loan, CitiMortgage remained in possession and custody of the Note. CitiMortgage, as servicer, remained in control of the key mortgage documents, including the Note.   This was consistent with Fannie Mae's standard practices for mortgage loans like the Bishops' [Trial Exhibit 11, 2011 Guide, Part I, Ch.4 (Mortgage Loan Files and Records) (pp. 104-9 to 104-11)]. CitiMortgage was authorized to enforce the Note, doing so for the benefit of Fannie Mae [Trial Exhibit 11, 2011 Guide, Part I, Ch.2, §202.07.02 (p. 102-36)].[6]

The Bishops made a few of the payments on the Mortgage and Note, but they made their last payment on November 6, 2008, after which they ceased all further payments, and were in default.[7]   The record reflects that the Bishops have occupied the Property and have not made any mortgage payments in over six years.  Pursuant to Fannie Mae's Servicing Guide, CitiMortgage had the authority to negotiate with the Bishops should they have sought to discuss a modification of the terms of their Mortgage and Note [Trial Exhibit 11]. To enable CitiMortgage to pursue a foreclosure action, MERS assigned the Mortgage to CitiMortgage. MERS did so by an assignment made on July 17, 2009 (the "Assignment of Mortgage"). The Assignment of Mortgage was recorded with the Recorder of Deeds on September 16, 2009.[8]

## B. Beginning of Litigation

On July 29, 2009, CitiMortgage, as Plaintiff, commenced an *in rem* mortgage foreclosure action in Delaware Superior Court against the Bishops (the "Foreclosure Action").[9]   On July 27, 2011, while the Foreclosure Action was still pending in state court, the Bishops filed a Chapter 13 bankruptcy petition in this Court.  On October 3, 2012, Mr. Bishop commenced this adversary proceeding against Defendants with the filing of the original Complaint [Adv. Docket No. 1].

---

[6] As determined by the Delaware Superior Court after a three-day trial.

[7] *CitiMortgage v. Bishop*, 2013 WL 1143670, at *3.  This trial took place while the Debtors were in bankruptcy, as this Court lifted the stay to allow this trial to go forward in the Superior Court [Case No. 11-12338 (BLS), Docket No. 211].

[8] *Id.* at *2.

[9] *Id.*

By Order dated May 21, 2012 [Adv. Docket No. 211], this Court
stayed this adversary proceeding and modified the automatic stay to
allow the pending state court foreclosure proceeding to proceed to
conclusion.  After a three-day trial (during which the Bishops actively
represented themselves), the Delaware Superior Court determined that
CitiMortgage, as the servicer of the mortgage, was a "proper party" to
foreclose, notwithstanding Fannie Mae's purchase of the mortgage and
note in 2007.  The Delaware Superior Court Opinion categorically
rejected the Bishops' arguments in opposition to foreclosure.  That
opinion was lodged on the Docket in this Court on March 6, 2013 [Adv.
Docket No. 31].

On November 13, 2012, Defendants herein moved for dismissal
of this adversary proceeding based on the findings and conclusions
made in the Superior Court Opinion [Adv. Docket Nos. 15 & 16].  By
Memorandum Order dated March 27, 2013, this Court dismissed the
Complaint on the ground that, inter alia, the findings and rulings of the
Delaware Superior Court were entitled to preclusive effect, and that
Plaintiffs herein were not entitled to relitigate in this Court matters that
had been presented to and ruled upon by the Delaware Superior Court
[Adv. Docket No. 33].

Plaintiff timely appealed that order of dismissal.  On appeal, the
District Court affirmed several of this Court's rulings, but remanded
the matter back to this Court to address two separate issues.  First, the
District Court determined that Plaintiff should be afforded the
opportunity to amend his complaint to assert certain Truth-in-Lending
Act claims ("TILA").  Second, the District Court determined that this
Court's adoption, for collateral estoppel purposes, of the Delaware
Superior Court's Opinion was not proper in the context of motion
practice under Rule 12.  Instead, the District Court found that the
summary judgment standard should have been applied, and therefore
remanded the matter to this Court "for further consideration using the
summary judgment standard." [District Court Op. at 12].  Following
the issuance of the remand, this Court granted Mr. Bishop 30 days to
file an amended complaint.

## C. The Second Amended Complaint and Related Litigation

The Second Amended Complaint to add additional fact
information was filed by Mr. Bishop on May 2, 2014 [Adv. Docket No.
60].  The Second Amended Complaint (the "Complaint"), which is the
current complaint in this proceeding, was filed on May 2, 2014 [Adv.
Docket No. 60].  The Complaint sets forth seven counts.  Counts One

through Six of the Complaint alleges violations of 15 U.S.C. § 1641(g) of TILA.  Count Seven of the Complaint alleges a violation of 15 U.S.C. § 1641(f) of TILA.  Fannie Mae responded by filing a Motion to Dismiss and a memorandum in support [Adv. Docket No. 61 & 62].  Mr. Bishop then filed a Motion for Judgment on the Pleadings [Adv. Docket No. 64].  Fannie Mae filed an objection to the Motion for Judgment on the Pleadings [Adv. Docket No. 65].

The Court held a hearing on October 1, 2014.  During this hearing the Court denied all outstanding motions and directed Fannie Mae to file an Answer to the Second Amended Complaint.  The Court informed the parties that it would follow the directions of the District Court and schedule a trial promptly.  The Court prepared and issued a Trial Scheduling Order requiring the Defendant to file an Answer to the Complaint by October 16, 2014 and setting a trial date for December 15, 2014 [Adv. Docket No. 70].

Defendant timely filed its Answer to the Second Amended Complaint on October 16, 2014 [Adv. Docket No. 71].  Defendant filed and served interrogatories, request for productions, and request for admissions directed to the Plaintiff on October 24, 2014 [Adv. Docket No. 74].[10]  Mr. Bishop filed a request for the Court to reconsider or modify the scheduling order on October 23, 2014 [Adv. Docket No. 73], which was denied by the Court on October 31, 2014 [Adv. Docket No. 76].

Mr. Bishop then attempted to initiate an interlocutory appeal of the trial scheduling order on November 5, 2014 [Adv. Docket No. 77].  This Court denied certification of the appeal, stating that trial would commence on December 15, 2014 [Adv. Docket No. 82].  On November 6, 2014 Mr. Bishop filed a Motion to Strike [Adv. Docket No. 79].  This motion was denied on November 7, 2014 [Adv. Docket No. 80].

Mr. Bishop then filed a Motion for Summary Judgment against himself for failure to comply with the trial scheduling order [Adv. Docket No. 83].  Mr. Bishop also filed a motion for relief from judgment or for reconsideration of the scheduling order [Adv. Docket No. 91].  These motions were also filed in the District Court.  The District Court denied the motions, stating that "a trial is scheduled for December 15, 2014." [Adv. Docket No. 92].

The record further reflects that during this time period, Mr. Bishop took his appeal of the District Court's order affirming the

---

[10] Bishop did not respond the discovery served upon him.  In accordance with Federal Rules 26 and 37, Fannie Mae's Request for Admissions are deemed admitted.

Bankruptcy Court's orders which struck their notice of appeal from a judgment of the Delaware Superior Court to the United States Supreme Court.   Mr. Bishop's Petition for Writ of Certiorari was filed on November 10, 2014, and was promptly denied on December 8, 2014.

In compliance with the scheduling order, on December 12, 2014, Fannie Mae filed their Pre-Trial memorandum [Adv. Docket No. 94], an Affidavit of Jarvis Obarakpor [Adv. Docket No. 95], a response to Mr. Bishop's Motion for Summary Judgment [Adv. Docket No. 96], and a Motion in Limine to Preclude All Testimony or Evidence Responsive to Defendant's First Set of Interrogatories and Requests for Production of Documents [Adv. Docket No. 97].   A trial was conducted in this Court on December 15, 2014. This matter is ripe for disposition.

## II. JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b).   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (O).[11]

## III. LEGAL ANALYSIS

### A. Pretrial Issues and the December 15, 2014 Trial

Trial was held on December 15, 2014.   Mr. Bishop elected to gamble on a risky trial strategy to not comply with the trial scheduling order, and he thus deliberately failed to prepare for trial in the obvious hope that the Court would continue the trial.   Plaintiff did not put on any evidence at trial; however, Plaintiff was afforded the opportunity to cross-examine witnesses, and Plaintiff actively participated in the hearing on the merits.   Mr. Bishop extensively cross-examined the Fannie Mae representative for over an hour.   The Court notes that Bishop was given extensive leeway in his cross examination of a witness, and his cross examination went to the merits and included questions that were outside the scope of the direct examination.   The Court allowed these lines of questioning as a courtesy to a *pro se* litigant.   However, Mr. Bishop was vocally unsatisfied with the Court's handling of the trial, and left during the direct examination of the

---

[11]This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that this Court's authority is determined to be within the parameters of 28 U.S.C. § 157(c)(1), this Opinion and the accompanying Order shall be deemed to be the Court's proposed findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033.

second witness, stating that he wished to leave to avoid being held in contempt of court on account of his conduct.

At trial, Plaintiff did not produce any evidence or put on any case, and immediately rested. Defendant called the designated corporate representative for Fannie Mae, Jarvis Obarkpor, who is a manager of customer support credit and credit portfolio management. Mr. Obarkpor testified that Fannie Mae had an ownership interest in the Mortgage and the Note. He also testified regarding the handling of Bishop's contact with Fannie Mae's consumer call center.

Defendant also called Misty K. Montag, a representative of CitiMortgage's adversary group and Lisa Hatfield, Esquire, who served as attorney for CitiMortgage in the Foreclosure Action. These witnesses testified regarding the background facts concerning the Mortgage and Note, pertinent notices to the Bishops, the ownership of the Mortgage and Note, the servicing relationship between CitiMortgage and Fannie Mae, the default payment on the Mortgage and Note, and also pertinent events in the Foreclosure Action including documents.

## B. Preclusive Effect of the Delaware Superior Court Opinion

As discussed above, the Bishops tried their case in the Superior Court in a three-day trial before Judge Scott in 2013. This Court permitted that litigation to proceed, and stayed this adversary proceeding, on the ground that the pending state court litigation involved the same facts and legal theories as this adversary proceeding.

Following trial, Judge Scott issued a persuasive and dispositive ruling that considered and rejected the arguments raised in this adversary proceeding. On remand, this Court (in lieu of considering the matter under the summary judgment standard) scheduled a trial on the merits of the Complaint. The trial scheduling order issued by the Court observed that this adversary proceeding has been pending for over two years, and was "expressly intended … to afford all parties a full and fair opportunity to present their respective cases and to develop a record sufficient for the Court to rule on the merits." Scheduling Order at 2. [Adv. Docket No. 88]. That scheduling order also expressly provided that the Court would promptly make itself available for telephone hearings in the event of disputes in the trial preparation process. *Id.*

Mr. Bishop did not present any evidence or argument in response to the findings and conclusion reached by Judge Scott.

Following a full opportunity to litigate the matter first in the Superior Court and then in this Court, this Court finds that preclusive effect must be accorded to the Superior Court Opinion: the Debtor's arguments that challenge standing and the assignment were fully litigated and adjudicated adversely to the Bishops by the Superior Court.[12]

## C. Claims One through Six (TILA Claims)

Claims One through Six in the Complaint are based upon 15 U.S.C. § 1641(g) of TILA. A plaintiff alleging a violation of 15 U.S.C. § 1641(g) must plead and prove both a transaction that would give rise to the defendant's obligation to notify under 1641(g), and a failure on the part of the defendant to notify.[13] Section 1641(g) was enacted by Congress and became effective on May 20, 2009.[14] Section 1641(g) provides:

> (g) Notice of new creditor
>
> (1) In general In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;

---

[12] The Court observes that this determination appears consistent with the District Court's expectation: "Hence, the Superior Court's findings appear to preclude [the Bishops] from raising claims …. The Court has considered whether harmless error might apply, and believes that it is a close question. In view of the Court's decision to remand on other grounds *infra*, the Court believes the better course is to do so on this ground." [Adv. Docket No. 56 at 12]. Having given Plaintiff yet another day in court, the result is the same.

[13] *Rivera v. Recontrust Co.*, 2012 WL 2190710, at *4 (D. Nev. June 14, 2012).

[14] Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22, div. A, title IV, § 404(a), 123 Stat. 1632 (May 20, 2009) (amending section 131 of TILA by inserting new subsection (g)). *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011); *Craig v. Bank of New York Mellon Corp.*, 2014 WL 1347225, at *10 (E.D.N.Y. Mar. 31, 2014); *Le v. 1st National Lending Services*, 2013 WL 6170630, at *4 (N. D. Cal. Nov. 20, 2013); *Connell v. CitiMortgage, Inc.*, 2012 WL 5511087, at *1 (S.D. Ala. Nov. 13, 2012).

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

(2) Definition As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

## 1. Section 1641(g) is not Retroactive

Section 1641(g) is not retroactive and it does not apply to transactions that preceded its effective date.[15] Fannie Mae acquired its ownership interest in the Bishops' Mortgage Loan on or about June 28, 2007, as recorded in the MERS records for the Property on June 29, 2007. Fannie Mae's ownership in the Mortgage Loan since that date has been continuous.

Mr. Bishop has failed to show any evidence that Fannie Mae gained its interest after the effective date of Section 1641(g) on or after May 20, 2009. Mr. Bishop has also failed to prove that Fannie Mae's ownership interest in the mortgage has not been continuous since June 29, 2007, the date it was recorded. Mr. Bishop's allegation of a TILA violation under Section 1641(g) must fail.

---

[15] *Fazio v. Washington Mut. FA*, 2014 WL 2593752 at *8 (E.D. Cal. June 10, 2014) (*citing Ballard v. Bank of America, N.A.*, 2014 WL 503143, at *3 (C.D.Cal. Jan. 28, 2014)); *In re Kazmi*, 2013 WL 4859320, at *4 (Bankr. E.D. Va. Sept. 6, 2013) ("Section 1641(g) does not apply retroactively. It, therefore, applies only to sales, transfers, or assignments of mortgage loans that occur after the May 20, 2009, effective date of the amendment."); *Connell v. CitiMortgage, Inc.*, 2012 WL 5511087 at *1 (*citing Foley v. Wells Fargo Bank*, N.A., 2012 WL 4829124, *2 (S.D.Fla. Sept. 28, 2012)); *Le v. 1st National Lending Services*, 2013 WL 6170630 at *4 (*citing Nonyadi v. CitiMortgage, Inc.*, 2013 WL 2898143, at *8 (C.D. Cal. June 10, 2013)); *Edwards v. Ocwen Loan Servicing, LLC*, 2012 WL 844396, at *8 (E.D. Tex. Mar. 12, 2012); *Craig v. Bank of New York Mellon Corp.*, 2014 WL 1347225, at *10 ("District courts to have considered the issue appear to have uniformly held that § 1641(g) is not retroactive"); *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d at 353 ("Nothing in TILA indicates that this provision should be applied retroactively . . . [and there is a] well-established presumption against retroactivity").

### 2. Fannie Mae is not a "Creditor" or an Assignee of a "Creditor" Under Section 1641(g)

Alternatively, Mr. Bishop's claims must fail because Fannie Mae is not a "Creditor" or an assignee of a "Creditor" under § 1641(g).  An action under § 1641(g) can only be brought against "creditors" or their "assignees."[16] The term "creditor" as used in TILA is defined in 15 U.S.C. §1602(g). That section states that "creditor" "refers only to a person who both (1) regularly extends, … consumer credit …, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."[17] For purposes of TILA and § 1641(g), what matters is the transfer of the debt obligation, generally in the form of the mortgage note. "[T]he Note is the obligation to pay borrowed money, [while] the mortgage merely creates a lien against the property as security for that obligation."[18]

Here, CitiMortgage, as servicer of the Mortgage, was conveyed holder status of the Note, and as such was and is entitled to enforce the Note for the benefit of Fannie Mae [Trial Exhibit 11].  As determined by the Foreclosure Action, CitiMortgage had authority to act with respect to the Mortgage Loan, including authority to foreclose. Accordingly, Fannie Mae's status as the owner or investor in the Mortgage Loan does not render it the assignee of the "Creditor" of the Bishops, for purposes of § 1641.  Thus, Fannie Mae is not a creditor or an assignee of a creditor under § 1641(g).

For the two independent grounds articulated above, judgment will be entered in favor of Fannie Mae on Counts 1 through 6.

### D. Count 7

Count 7 of the Complaint is based upon Section 1641(f).  Section 1641(f) provides:

> (f) Treatment of servicer
>
> (1) In general. A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as

---

[16] *Rider v. HSBC Mortg. Corp. (USA),* 2013 WL 3901519, at *3 (S.D. Ohio July 29, 2013).

[17] *Id.*

[18] *Connell v. CitiMortgage, Inc.,* 2012 WL 5511087, at *8, n. 14, *quoting Knowles v. HBSC Bank USA,* 2012 WL 2153436, *3 (N.D. Ala. June 8, 2012).

an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

(2) Servicer not treated as owner on basis of assignment for administrative convenience. A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

(3) "Servicer" defined. For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of Title 12.

(4) Applicability. This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

By its plain language, Section 1641(f) of TILA only imposes obligations on servicers of mortgage loans.[19] More specifically, Section 1641(f) applies only to any servicer that has also become an assignee from the original "creditor."[20] A "creditor" is defined as "the person who the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such indebtedness, by agreement."[21]

Mr. Bishop has failed to produce any evidence that Fannie Mae is the servicer of the Mortgage. Section 1651(f) only applies to the

---

[19] 15 U.S.C. § 1641(f); *Reed v. Chase Home Fin., LLC*, 723 F.3d 1301, 1302 (11th Cir. 2013).

[20] *Gale v. First Franklin Loan Services*, 701 F.3d 1240, 1246 (9th Cir. 2012) ("[T]he duty to provide notice under § 1641(f)(2) applies only to a servicer-assignee, which in this case does not include Franklin."); *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 718 (6th Cir. 2013) (Section 1641(f) imposes liability "only on servicers who are also creditors or creditor-assignees").

[21] 15 U.S.C. § 1602(f).

servicer of the mortgage.  Without this showing, Mr. Bishop's claim must fail.

### E. Statute of Limitations and Equitable Tolling

#### 1. The Statue of Limitation Bars the Current Claims.

Even if Section 1641(g) applied retroactively, Mr. Bishop's argument must fail because the one-year statute of limitation under TILA would bar the claim.  All seven of the Counts in Bishop's Complaint are TILA damages claims. A damages action for a TILA nondisclosure violation is subject to a one-year statute of limitations, which runs from the date of the occurrence of the alleged violation.[22] Because 15 U.S.C. § 1641(g) allows a creditor 30 days in which to provide notice to the borrower of a transfer or assignment, the statute of limitations for an action under § 1641(g) begins to run when those 30 days have expired.[23]

Here, Fannie Mae acquired its ownership interest in the Mortgage on June 28, 2007.  Assuming all other conditions are met, Fannie Mae would have been required to ensure that notice of the transfer was given to the Bishops by July 28, 2007.  Thus, the one-year statute of limitations would have been July 27, 2008.  This proceeding was commenced on October 3, 2012, and therefore is time-barred.

#### 2. Equitable Tolling Does not Save the Claims.

The Third Circuit has held that TILA's statute of limitations is subject to equitable tolling.[24] Three scenarios exist where equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.[25]

---

[22] 15 U.S.C. § 1640(e). *Hopson v. Chase Home Finance LLC*, 2014 WL 1411811, at *6 (S.D. Miss. Apr. 11, 2014); *Sykes v. RBS Citizens, N.A.*, 2 F.Supp.3d 128, 142 (D.N.H. 2014); *Fazio v. Washington Mut. FA*, 2014 WL 2593752, at *8; *Orman v. MortgageIt*, 2012 WL 1071219, at *7 (E.D.Pa. March 30, 2012); *Connell v. CitiMortgage, Inc.*, 2012 WL 5511087, at *8; *Sarsfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 560 (M.D. Pa. 2010).

[23] *Kilpatrick v. U.S. Bank, NA*, 2014 WL 1247336, at *3 (S.D. Cal. Mar. 24, 2014); *Connell v. CitiMortgage, Inc.*, 2012 WL 5511087 at *8; *Squires v. BAC Home Loans Servicing, LP*, 2011 WL 5966948, *2 (S.D.Ala. Nov. 29, 2011).

[24] *Sarsfield v. Citimortgage*, 707 F.Supp.2d at 560; *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504–505 (3d Cir.1998).

[25] *Sarsfield v. Citimortgage*, 707 F.Supp.2d at 560; *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994).

Mr. Bishop has failed to present any evidence that Fannie Mae has actively misled the Bishops.  Mr. Bishop has failed to present any evidence that he has been prevented from asserting his or her rights. To the contrary, Mr. Bishop has actively litigated and lost in both the Delaware Superior Court and this Court.  Mr. Bishop has also failed to produce any evidence that he has timely but mistakenly asserted his rights in the wrong forum.  Accordingly, equitable tolling does not apply to extend the statute of limitations, and the action is time-barred.[26]

## F. Sanctions Against the Plaintiff

Fannie Mae has asked this Court to issue appropriate sanctions against Mr. Bishop for frivolous and vexatious litigation.  Fannie Mae argues that there is no evidence that the Bishops received false or misleading information about their Mortgage loan; no evidence of any fraudulent concealment such as the Complaint describes. Fannie Mae believes that the evidence points to the Bishops as having done all they could to manufacture meritless claims, in a concerted effort to waylay servicer CitiMortgage in foreclosing on the Property. Fannie Mae states that the action against Fannie Mae is subject to dismissal on a half dozen independent grounds. Fannie Mae believes that this litigation is frivolous, and has constituted an abuse of the legal system aimed at blocking – for years – a justified foreclosure of a mortgage upon which the last payment was made over six years ago. Fannie Mae states that this bad faith litigation has placed a substantial burden on Fannie Mae and CitiMortgage, as well as the courts, in the process.

The Court recognizes the burden imposed on the Defendant by the litigation surrounding this matter.  It is beyond any doubt that this Plaintiff has a history of frivolous pleadings, as noted by other courts. In *Bishop v. Deputy*, the United States District Court for the District of Delaware stated:

> In response to defendant's motion for award of attorney's fees, plaintiffs fail to address defendant's arguments regarding the baseless, frivolous, and unreasonable nature of the instant litigation. Instead, plaintiffs repeat their allegations concerning civil rights violations and now include deposition testimony to support their cause

---

[26] In light of the above holdings, it is not necessary for the Court to determine whether the *Merrill* Doctrine affords Fannie Mae a complete defense to the Bishops' claims.

of action. Concerning the actual fees, plaintiffs contend that defendant's attorney's fees have been paid by an insurance policy. Plaintiffs, therefore, argue that defendant should not be awarded any fees since no direct expenses were incurred.

Taking plaintiffs' pleadings, motions, and statements in a light most favorable to them because they do not have the benefit of counsel, the court agrees with defendant that plaintiffs made bald allegations without offering any evidentiary support. The court does not condone frivolous litigation and deems that the instant case was entirely without foundation.[27]

Most recently, in the instant case the Third Circuit Court of Appeals admonished the Plaintiffs for their behavior. There, the Third Circuit stated "[w]e agree with the District Court that the Bankruptcy Court did not abuse its discretion in striking the Bishops' frivolous pleading."[28] The Third Circuit Court of Appeals also stated that "[b]aseless litigation is not immunized by the First Amendment right to petition."[29] Plaintiffs attempted to appeal this ruling to the United States Supreme Court, but their writ was denied.[30]

Most importantly, the Third Circuit Court of Appeals has given specific warnings to this Debtor and directions to this Court on how to handle the behavior of this Plaintiff.

"Appellants' argument that the Clerk's office restricts public access to the docket numbers for the purpose of creating grounds to dismiss an appeal on technical reasons is baseless. If Appellants need to refer to a docket entry, they can simply list the date the document was filed and the title of the document. Appellants' appeal of the District Court's order does not fail for technical

---

[27] 2003 WL 22284037, at *3 (D. Del. Sept. 29, 2003) aff'd, 95 F. App'x 462 (3d Cir. 2004).

[28] *In re Bishop*, 559 F. App'x 175 (3d Cir. 2014) cert. denied sub nom. *Bishop v. U.S. Bankr. Court for Dist. of Delaware*, No. 14-5072, 2014 WL 6860649 (U.S. Dec. 8, 2014).

[29] *Id.*

[30] *Bishop v. U.S. Bankr. Court for Dist. of Delaware*, 2014 WL 6860649 (U.S. Dec. 8, 2014).

reasons or because they are proceeding *pro se*; rather, their appeal is unsuccessful for the wholly substantive reasons explained above. **<u>Appellants are advised that future frivolous pleadings may result in financial sanctions and filing limitations.</u>**[31]

This Court has authority to sanction a plaintiff for abusive litigation conduct.[32] A court can impose sanctions under its inherent power to regulate practice before it.[33] Such sanction could be a restriction on further filings.[34]

However, the Court is reluctant to issue sanctions against a *pro se* litigant attempting to pursue a difficult and complex TILA claim and call it a frivolous action. "Finding the instant litigation to be without merit, the court, nevertheless, does not think that a *pro se* litigant should be financially burdened because he fails to recognize deficiencies in his legal claims."[35] With that said, the Court does wish to call attention to the misconduct of Mr. Bishop, both during this trial and throughout the entirety of this bankruptcy. The conduct displayed by Mr. Bishop is unacceptable, and he has been warned numerous times during this litigation. The Court will not hesitate to issue sanctions in the future should Mr. Bishop's conduct continue.

---

[31] *In re Bishop*, 559 F. App'x 175, 176 (3d Cir. 2014) cert. denied sub nom. *Bishop v. U.S. Bankr. Court for Dist. of Delaware*, No. 14-5072, 2014 WL 6860649 (U.S. Dec. 8, 2014) (emphasis added).

[32] Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

[33] *Id.*; 11 U.S.C. §§ 105(a), 109(g), & 349(a).

[34] *In re Kozich*, 406 B.R. 949 (Bankr. S.D.Fla. 2009) (debtor's conduct in filing adversary complaint warranted restrictions barring debtor's *pro se* filing of adversary proceeding or contested matter without court approval).

[35] *Bishop v. Deputy*, 2003 WL 22284037, at *3 (D. Del. Sept. 29, 2003) aff'd, 95 F. App'x 462 (3d Cir. 2004).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to produce evidence to support Claims One through Seven.  Separately, the Court finds that the findings and rulings of the Superior Court are entitled to preclusive effect in this adversary proceeding.  Judgment will be entered in favor of Fannie Mae.  An appropriate Order follows.

**BY THE COURT**:

Dated: March 2, 2015
Wilmington, Delaware

_____
Brendan Linehan Shannon
Chief United States Bankruptcy Judge